UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JENEL SHANNONE BYRD,

                              Plaintiff,

        -against-

WESTCHESTER COUNTY POLICE
DEPARTMENT, et al.,

                              Defendants.

---

1:24-CV-9547 (LTS)

ORDER OF DISMISSAL
WITH LEAVE TO REPLEAD

LAURA TAYLOR SWAIN, Chief United States District Judge:

        Plaintiff Jenel Shannone Byrd, who is appearing *pro se*, filed this action invoking both

the court's federal question jurisdiction and diversity jurisdiction. In her complaint, she alleges

that the following are the federal constitutional or federal statutory bases for her claims brought

under the court's federal question jurisdiction: "Amendment[] I, Amendment IV, Amendment V,

Amendment VI, Amendment VIII, Amendment XIII Sec. 1, Amendment XIV Sec. 1, Sec. 4,

Amendment XV Sec. 1, remedy by due course of law, remedy for injury to person, property, and

reputation, right to peacefully assemble [*sic*]." (ECF 1, at 2.) Plaintiff names as defendants:

(1) the Westchester County Police Department ("WCPD") (also known as the Westchester

County Department of Public Safety); (2) the New York City Police Department ("NYPD");

(3) "Every Police Department in the United States of America," which the Court construes as

unspecified police departments of municipalities located within Westchester County, in Atlanta,

Georgia, and within other unspecified parts of the States of New York, Connecticut, New Jersey,

Texas, Florida, Ohio, and Tennessee, as well as within the Commonwealths of Pennsylvania and

Kentucky; and (4) the White Plains Police Department ("WPPD"). In addition to seeking

damages, Plaintiff asks the Court to "wip[e] out . . . the tickets – every ticket on [her] car [–] and

. . . cancel[] . . . the towing fee." (*Id.* at 6.) She also asks the Court to order the return of her

vehicle, which has been towed. The Court construes Plaintiff's complaint as asserting claims of violations of her federal constitutional rights, brought under 42 U.S.C. § 1983, as well as claims under state law.

Plaintiff filed with her complaint a motion for a temporary restraining order and a preliminary injunction (ECF 4) ("OTSC"), as well as a declaration in support of that motion (ECF 5), in which she sought immediate injunctive relief from a "car towing event, excessive ticketing, [and] excessive calls [and] proceedings to approach [her], touch [her], [and] arrest [her]" (*id.* at 2). She also sought the "clear[ing] . . . of [all] the parking tickets off of [her] car and . . . the release of it from the towyard and . . . its return to [her] with no fees." (*Id.*) In addition, Plaintiff sought damages "for the 7 days [she] slept outside in the freezing cold." (*Id.*) In a brief order dated December 19, 2024, the Court denied Plaintiff's OTSC and notified Plaintiff that the Court would issue an explanatory order at a later date. (ECF 8.)

On December 26, 2024, Plaintiff filed a motion "for a false docket," with an attached supporting declaration, in which she asks the Court to "disclose documents and answers, appearances, claims, stories, [and] communications submitted in response to her complaint, motion, [and] IFP [application] . . . filed in . . . [the] Court." (ECF 9, at 1.) In that same motion, she asks that this action be reassigned to another judge because, she alleges, this action has been "conducted with false actions, falsifications, [and] service of process." (*Id.*) That motion is pending.

On January 10, 2025, Plaintiff filed another declaration. (ECF 10.) That declaration "is in opposition of the judgment that irreparable harm has not been done already by the actions of the Police Force embezzling power, abusing process[,] and extorting." (*Id.* at 1.)

On that same date, January 10, 2025, Plaintiff filed another motion in which she asks the Court for "permission to submit . . . files/documents to supplement [her] prior statements and complaints detailing . . . excessive ticketing and [an] extortion scam through aggressive pursuits of [Plaintiff's] system's resources including the written law constituting aggravated assault [*sic*]." (ECF 11, at 1.) That motion is also pending.

Six days later, on January 16, 2025, Plaintiff filed a motion in which she "requests that the Court grant/order a stay on the car payments and insurance payments (– rather fees – ) until this complaint and case of motion requests is resolved and/or the matter is addressed of justifying her cause of action with relief as it so strongly suggests through dire necessity [*sic*]." (ECF 13.) On that same date, Plaintiff filed a declaration seemingly in support of that motion in which she states that she "would like to pay her car note [and] car insurance in all due relevance of her agreement," and also in which she "request[s] a stay on her payments for tolls, insurance, [and] care note." (ECF 12, at 1.)

On February 6, 2025, Plaintiff filed a letter with the court in which she asserts that, "on several occasions[,] [her] files were stolen out of her [vehicle]." (ECF 14, at 1.) In that same letter, Plaintiff asserts that, on February 4, 2025, she "was arrested on [the Long Island Rail Road] for not having a ticket and [was] kept through February 5, 2025," when she was released. (*Id.* at 2.) She states that, when she was released, she noticed that some of the legal files/papers that she was carrying when she was arrested were missing or damaged. (*Id.*) She further states that she "want[s] the defendants enjoined [] from ticketing [her] car or associated vehicles[,] from arresting [her] or approaching [her] for stupid reasons[,] from accessing . . . [her] emails

and cell phones[,] and from tampering with a docket that [she is] on or tampering with any defendant [she is] suing."[1] (*Id.* at 5.)

By order dated December 19, 2024, the Court granted Plaintiff's request to proceed *in forma pauperis* ("IFP"), that is, without prepayment of fees. For the reasons set forth below, the Court dismisses this action, but grants Plaintiff 30 days' leave to replead certain claims in an amended complaint, as specified below.

## STANDARD OF REVIEW

The Court must dismiss an IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction of the claims raised. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted, emphasis in original). But the "special solicitude" in *pro se* cases, *id*. at 475 (citation omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil

---

[1] Plaintiff made similar allegations in letters received by the court on May 16, 2025. (ECF 16 & 17.)

Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

Rule 8 requires a complaint to include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Id.* But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Id.* (citing *Twombly*, 550 U.S. at 555). After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible – not merely possible – that the pleader is entitled to relief. *Id.* at 679.

## BACKGROUND

Plaintiff alleges the following in her complaint and in other abovementioned submissions, which the Court construes as supplements to the complaint: The events that are the bases for Plaintiff's claims have occurred "continuous[ly], constantly, [and] most recent[ly][,] [between October 9, 2024, and the] present." (ECF 1, at 5.) These events have occurred in locations within the State of New York, including within the City of New York, the City of White Plains, and in other parts of Westchester County, as well as within Atlanta, Georgia, and also within locations within the States of Connecticut, New Jersey, Texas, Florida, Ohio, and Tennessee, and within the Commonwealths of Pennsylvania and Kentucky.

Plaintiff also alleges, in her complaint, that:

[i]n October of 2024, [she] started working on [her] . . . civil actions against law enforcement and some other agencies and companies. In October of 2024[,] the [WCPD] began excessively ticketing [her], excessively approaching [her] car,

approaching [her] car while [she was] in it, pulling up to [her] car while [it was] parked[,] and stacking multiple tickets in one day to [her] car for a quarter not being in the meter. The tickets were written 3 times a day up to December 2024[,] when they put a boot on [her] car. [Plaintiff] did not lose focus on [her] legal work from [D]ecember 4 to [D]ecember 6[,] 2024[,] because [she] was crunched for time to file [her] claims. . . . After excessively ticketing [her] and booting [her] car, [the WCPD] towed [her] car on Saturday, December 7, 2024[,] . . . as [she] sat in Westchester[] [County's] public library. . . . None of the officers alerted [Plaintiff] and [she] became stuck in Westchester [County] because [she] was not leaving without [her] car. . . .

(*Id.* at 5.)

Plaintiff makes similar allegations in her letters (ECF 14, 16-17); she asserts that, "[s]tarting [on] October 10th, 11th, 12th, 13th, and so on until December 4th, [her] car was excessively ticketed [by members of the WPPD] with three tickets a day or two tickets a day minimum" (ECF 14, at 6). Plaintiff also alleges that she "received two tickets while seated in [her] car with it running, waiting for a parking spot." (*Id.*) She further seems to allege that, on December 4, 2024, her vehicle was booted, and that, in order to prevent her vehicle from being towed, she slept in her vehicle, where she "was forced to freeze with no gas or heat [because] . . . the [temperature] . . . was below zero [degrees]." (*Id.* at 7.) In addition, Plaintiff alleges that, "[a]fter [her] car was towed on [December 7, 2024, and until] . . . January 31, 2025, [she] ha[s] not seen any cars parked outside [where her vehicle was] with tickets on them." (*Id.* at 6-7.) She states that her vehicle was towed "after [she] entered the public library for a few hours[;] [she] came out and [her] car was gone with [her] valuable possessions inside." (*Id.* at 7.)

In the injuries section of her complaint, Plaintiff asserts that she has suffered:

sexual assault, physical assault being outside all night [and] all day with nowhere to sleep in Westchester County. [She] would not leav[e] [her] brand new car, all travel plans, meetings possible were halted. [She] was unable to produce any income or even sit in the freezing cold, knees are injured from walking 24[/]7. Hips are injured from walking 24[/]7. [Plaintiff's] brand new car has valuable

collections totaling [five] figures and valuable art totaling [five] figures, [her] laundry soap, and etc. [*sic*].

(ECF 1, at 6.)

Plaintiff, in all of her submissions, has made many other allegations that appear to be tenuously connected, if connected at all, to the allegations mentioned above. They include allegations about the manner in which she purchased her vehicle, her inability to make payments with respect to her vehicle loan and vehicle insurance, and about the delinquent amounts she owes for tolls incurred within the States of New York and New Jersey, and within the Commonwealth of Massachusetts. They also include allegations about other alleged negative experiences in her life, including, but not limited to, her being arrested on the Long Island Rail Road after failing to purchase a ticket to ride a train.

## DISCUSSION

The Court understands that Plaintiff is asserting claims that the defendants and, perhaps, others are criminally liable. The Court also understands that Plaintiff is asserting claims of violations of her federal constitutional rights against the defendants, under 42 U.S.C. § 1983, for damages and injunctive relief. The Court further understands that Plaintiff is requesting, in her motion concerning a "false docket" (ECF 9), that the undersigned recuse herself from this action. Plaintiff also states in that motion her belief that the defendants have been served and that this action has been proceeding with the defendants' participation and without her being notified. Before the Court addresses the merits of Plaintiff's claims in this order, the Court will address that motion, and also explain why it previously denied Plaintiff's OTSC.

### A.    Motion concerning a "false docket"

To the extent that Plaintiff requests, in her motion concerning a "false docket" (ECF 9), that the undersigned recuse herself from this action, the Court denies that relief. Also, to the

7

extent that Plaintiff seeks, in that same motion, relief regarding an alleged "false docket" created by this Court, the Court must deny such relief. A judge is required to recuse herself from "any proceeding in which [her] impartiality might reasonably be questioned." 28 U.S.C. § 455(a). When a judge's impartiality is questioned on bias or prejudice grounds, "what matters is not the reality of bias or prejudice but its appearance." *Liteky v. United States*, 510 U.S. 540, 548 (1994). That is, recusal is warranted if "an objective, disinterested observer fully informed of the underlying facts . . . [would] entertain significant doubt that justice would be done absent recusal." *United States v. Yousef*, 327 F.3d 56, 169 (2d Cir. 2003) (internal quotation marks and citation omitted, alteration in original).

The showing of personal bias must ordinarily be based on "extrajudicial conduct . . . not conduct which arises in a judicial context." *Lewis v. Tuscan Dairy Farms, Inc.*, 25 F.3d 1138, 1141 (2d Cir. 1994) (internal quotation marks and citation omitted). Judicial rulings "almost never constitute a valid basis for a bias or partiality motion." *Liteky*, 510 U.S. at 555; *see Fulton v. Robinson*, 289 F.3d 188, 199 (2d Cir. 2002) (affirming denial of recusal motion filed in case by plaintiff where judge had ruled against him on all his motions).

Plaintiff's request for the undersigned's recusal from this action seems to arise from Plaintiff's incorrect belief that this Court has created a "false docket" for this action, and has allowed the defendants to be served and to proceed in this action without notifying Plaintiff. The docket, however, accurately reflects the activity in this action. The defendants have not been served because no summonses have been issued by the court, and none of the defendants have proceeded in this action at all, let alone without providing notice to Plaintiff of their participation in this action. Since Plaintiff filed this action and was granted IFP status, Plaintiff's complaint and other submissions have been under review, as is required for such actions, pursuant to the

IFP statute. *See* 28 U.S.C. § 1915(e)(B)(2). Accordingly, because Plaintiff makes no showing of the undersigned's personal bias or prejudice against her, and because the Court has not created a "false docket" for this action, the Court denies Plaintiff's motion for the undersigned's recusal and for any relief regarding a "false docket." (ECF 9.)

**B.    Denial of OTSC**

The Court has denied Plaintiff's OTSC, in which she seeks immediate injunctive relief in this action, because of the deficiencies discussed below. To obtain the immediate injunctive relief she seeks, Plaintiff must show: (1) that she is likely to suffer irreparable harm and (2) either (a) a likelihood of success on the merits of her action or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in her favor. *See UBS Fin. Servs., Inc. v. W.V. Univ. Hosps., Inc.*, 660 F.3d 643, 648 (2d Cir. 2011) (citation and internal quotation marks omitted); *Wright v. Giuliani*, 230 F.3d 543, 547 (2d Cir. 2000); *Dennis v. K&L Gates LLP*, No. 1:20-CV-9393 (MKV), 2025 WL 902457, at *2 (S.D.N.Y. Mar. 25, 2025) (quoting *MyWebGrocer, LLC v. Hometown Info, Inc.*, 375 F.3d 190, 192 (2d Cir. 2004)). Preliminary injunctive relief "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Moore v. Consol. Edison Co. of N.Y., Inc.*, 409 F.3d 506, 510 (2d Cir. 2005) (internal quotation marks and citation omitted).

Because of the deficiencies discussed below in this order, none of Plaintiff's submissions filed in this action demonstrate: (1) a likelihood of success on the merits, or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in Plaintiff's favor. These deficiencies, as detailed below, are the reasons for the Court's December 19, 2024 ruling denying Plaintiff's OTSC.

### C.    Improper joinder of claims

Plaintiff's claims that do not arise directly from Plaintiff's receipt of multiple summonses for parking and/or traffic violations (referred to by Plaintiff as "tickets"), and from the booting and towing of her vehicle, are not properly joined to this action. Under Rule 20(a)(2) of the Federal Rules of Civil Procedure:

> [p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the *same transaction, occurrence, or series of transactions or occurrences*; and (B) any question of law or fact *common to all defendants* will arise in the action.

Fed. R. Civ. P. 20(a)(2) (emphasis added). A plaintiff may not pursue unrelated claims against multiple defendants. *See, e.g.*, *Peterson v. Regina*, 935 F. Supp. 2d 628, 638 (S.D.N.Y. 2013) ("Case law makes clear that '[i]n the absence of a connection between Defendants' alleged misconduct, the mere allegation that Plaintiff was injured by all Defendants is not sufficient [by itself] to join unrelated parties as defendants in the same lawsuit pursuant to Rule 20(a).'" (quoting *Deskovic v. City of Peekskill*, 673 F. Supp. 2d 154, 167 (S.D.N.Y. 2009) (alterations in original)); *see also Trotman v. Warden of DOC NYC*, No. 1:24-CV-8455 (LTS), 2025 WL 700192, at *1 (S.D.N.Y. Feb. 28, 2025) ("Importantly, the Court notes that [u]nrelated claims against different defendants belong in different suits. . . ." (internal quotation marks and citation omitted, alteration in original)).

The focus of Plaintiff's claims against the named defendants appears to be her receipt of multiple summonses for parking and/or traffic violations and the booting and towing of her vehicle. Plaintiff's claims that arise from other alleged events – including, but not limited to: (1) the manner in which she purchased her vehicle; (2) her inability to make payments with respect to her vehicle loan and vehicle insurance; (3) being arrested on the Long Island Rail Road after failing to purchase a ticket to ride a train; and (4) any other alleged events that did not

occur within this judicial district[2] – do not appear to be related to those claims. The Court therefore dismisses Plaintiff's unrelated claims without prejudice to Plaintiff's filing new, separate, civil actions in which Plaintiff raises those other claims, joining only those that arise from the same facts and involve the same defendants in each action. *See Owens v. Conn.*, No. 3:24-CV-1824, 2025 WL 878863, at *2, ___ F. Supp. 3d ___ (D. Conn. Mar. 21, 2025) ("Here, Plaintiff asserts numerous claims against multiple defendants, with both the parties and claims being unrelated in many instances. Additionally, the facts supporting these claims span several years with no logical connection to justify adjudicating them together. Because such claims do not aris[e] out of the same transaction, occurrence, or series of transactions and occurrences Plaintiff's complaint fails to comply with Rule 20." (internal quotation marks and citation omitted, alteration in original)). Plaintiff's failure to comply with Rule 20 requires the dismissal of these additional claims from this action, without prejudice

**D.    Private criminal prosecution is not permitted**

Plaintiff seems to seek the criminal prosecution of at least some of the defendants, or possibly of other persons. The Court must dismiss her claims seeking such relief. Plaintiff cannot initiate a criminal prosecution in this court because "the decision to prosecute is solely within the discretion of the prosecutor." *Leeke v. Timmerman*, 454 U.S. 83, 86-87 (1981). Neither Plaintiff nor the Court can direct prosecutors to initiate a criminal proceeding against anyone because prosecutors possess discretionary authority to bring criminal actions and they are "immune from control or interference by citizen or court." *Conn. Action Now, Inc. v. Roberts Plating Co.*, 457

---

[2] This judicial district, the Southern District of New York, is comprised of the following New York State counties: (1) New York (New York City Borough of Manhattan); (2) Bronx (New York City Borough of the Bronx); (3) Westchester; (4) Dutchess; (5) Rockland; (6) Orange; (7) Putnam; and (8) Sullivan. *See* 28 U.S.C. § 112(b).

F.2d 81, 87 (2d Cir. 1972). Accordingly, because Plaintiff lacks standing to cause the federal criminal prosecution of others, *see Linda R.S. v. Richard D.*, 410 U.S. 614, 618-19 (1973), the Court dismisses, for lack of subject matter jurisdiction, any claims in which Plaintiff seeks the federal criminal prosecution of anyone, including the defendants, *see* Fed. R. Civ. P. 12(h)(3); *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62 (2d Cir. 2012) ("If [a] plaintiff[ ] lack[s] Article III standing, a [federal] court has no subject matter jurisdiction to hear [her] claim." (internal quotation marks and citation omitted)).

**E.      *Younger* abstention doctrine requires dismissal of certain claims**

Plaintiff seems to seek injunctive relief and declaratory relief that would intervene in Plaintiff's pending state court proceedings that have been initiated by the issuance of the abovementioned multiple parking and/or traffic violation summonses. The Court must dismiss such federal law claims, however, under the abstention doctrine first articulated by the Supreme Court of the United States in *Younger v. Harris*, 401 U.S. 37 (1971). Under that doctrine, a federal court may not enjoin a pending state criminal proceeding in the absence of special circumstances suggesting bad faith, harassment, or irreparable injury that is both serious and immediate. *See Gibson v. Berryhill*, 411 U.S. 564, 573-74 (1973) (citing *Younger*, 404 U.S. 37). Application of this *Younger* abstention doctrine has been extended to the three following categories of state court proceedings: (1) state criminal prosecutions; (2) civil enforcement proceedings that are "akin to criminal prosecutions"; and (3) civil proceedings "that implicate a State's interest in enforcing the orders and judgments of its courts." *Sprint Commc'n, Inc. v. Jacobs*, 571 U.S. 69, 72-73 (2013). It applies to claims for injunctive relief, as well as to claims for declaratory relief, sought in a federal court, that would cause that court to intervene in any of those abovementioned types of state court proceedings. *See Kirschner v. Klemons*, 225 F.3d 227, 235 (2d Cir. 2000). Courts have applied the *Younger* abstention doctrine with respect to a

plaintiff's efforts to have a federal court intervene in pending state court parking and traffic violation proceedings. *See Owens v. The Inc. Vill. of Garden City*, No. 23-CV-7730, 2024 WL 4728593, at *3-5 (E.D.N.Y. Nov. 8, 2024) (citing cases), *appeal withdrawn*, No. 24-3098 (2d Cir. Apr. 29, 2025); *Maidman v. New York*, No. 88-CV-1674 (CSH), 1989 WL 52347, at *2 (S.D.N.Y. May 8, 1989); *see Mawson v. Schneider*, No. 3:24-CV-2132, 2025 WL 594003, at *3-4 (M.D. Penn. Feb. 24, 2025); *Gorenc v. City of Westland*, 72 F. App'x 336, 338 (6th Cir. 2003) (unpublished opinion); *Ballard v. Wilson*, 856 F.2d 1568, 1569-71 (5th Cir. 1988).

The Court recognizes that Plaintiff has alleged that she was ticketed and threatened repeatedly with the towing of her vehicle. Under the factual circumstances described in her complaint and supplements, however, the allegations regarding those incidents are not sufficient to show that bad faith, harassment, or irreparable injury that is both serious and immediate has occurred with respect her pending state court proceedings initiated by the issuance of the abovementioned parking and/or traffic violation summonses. Thus, applying the *Younger* abstention doctrine, the Court dismisses Plaintiff's claims under federal law for injunctive relief and declaratory relief that would cause this court to intervene in those pending state court proceedings.

F.    **The *Rooker-Feldman* doctrine also requires dismissal**

Plaintiff also, or alternatively, seems to ask this Court to overturn a final order or judgment issued by a state court with respect to Plaintiff's delinquency in paying parking and/or traffic violation fines, resulting in the booting and towing of her vehicle. The *Rooker-Feldman* doctrine requires the dismissal of those claims. Under this doctrine, a federal district court lacks authority to review a final state court order or judgment where a litigant seeks relief that invites the federal district court to reject or overturn such a final state court order or judgment. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291-92 (2005). The *Rooker-*

*Feldman* doctrine "precludes a United States district court from exercising subject-matter jurisdiction." *Id.* at 291. This includes when a litigant seeks relief that invites a federal district court to reject or overturn a final state parking or traffic violation judgment. *Koziel v. City of Yonkers*, 351 F. App'x 470 (2d Cir. 2009) (summary order); *see Bey v. New York*, No. 10-CV-1466, 2010 WL 1688066, at *2 (E.D.N.Y. April 21, 2010) (challenge to administrative law judge judgments).

Federal district court review of claims is barred under the *Rooker-Feldman* doctrine when four requirements are met: (1) the litigant lost in state court; (2) the litigant complains of injuries caused by a final state court order or judgment; (3) the litigant invites district court review and rejection of the final state court order or judgment; and (4) the final state court order or judgment was rendered before the district court proceedings commenced. *See Dorce v. City of New York*, 2 F.4th 82, 101 (2d Cir. 2021) (internal quotation marks and citation omitted).

Because Plaintiff seems to seek this Court's review and its rejection or overturning of a final state court order or judgment arising from Plaintiff's delinquency with respect to paying parking and/or traffic violation fines, which resulted in the booting and, ultimately, the towing of Plaintiff's vehicle, the *Rooker-Feldman* doctrine bars this Court from granting Plaintiff such relief. The Court therefore dismisses any of Plaintiff's claims that challenge any such state court final order or judgment, under the *Rooker-Feldman* doctrine, for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3); *Exxon Mobil Corp.*, 544 U.S. at 291.

## G.    Claims under 42 U.S.C. § 1983 against the municipal police-department defendants

The Court understands that Plaintiff is asserting claims under 42 U.S.C. § 1983 against municipal police-department defendants, including the WCPD, the NYPD, and the WPPD. Unless otherwise authorized by a municipal charter, municipal agencies, such as the WCPD, the NYPD, and the WPPD, are not suable entities; they do not have the capacity to be sued, as

opposed to the respective municipalities themselves. *See* N.Y. City Charter ch. 17, § 396 ("[A]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law."); *Edwards v. Arocho*, 125 F.4th 336, 354 (2d Cir. 2024) ("A plaintiff cannot bring a claim against a municipal agency that does not have the capacity to be sued under *its municipal charter.*" (emphasis in original)); *Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007) (NYPD); *Surpris v. White Plains Police Dep't*, No. 1:21-CV-7546 (LTS), 2021 WL 5567825, at *2 (S.D.N.Y. Nov. 29, 2021) (WPPD); *Calley v. Town of Cortlandt*, No. 1:19-CV-5453 (CM), 2019 WL 11880434, at *2-3 (S.D.N.Y. July 8, 2019) (WCPD); *see also Emerson v. City of New York*, 740 F. Supp. 2d 385, 395 (S.D.N.Y. 2010) ("[A] plaintiff is generally prohibited from suing a municipal agency."). The Court therefore dismisses Plaintiff's claims against all of the abovementioned municipal police departments for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

The Court, however, understands Plaintiff's complaint and supplements as asserting claims under Section 1983 against the City of New York, the City of White Plains, and/or the County of Westchester. When a plaintiff sues a municipality, like the City of New York, the City of White Plains, or the County of Westchester, under Section 1983, it is not enough for the plaintiff to allege that one of the municipality's employees or agents engaged in some wrongdoing. The plaintiff must show that the municipality itself caused the violation of the plaintiff's rights. *See Connick v. Thompson*, 563 U.S. 51, 60 (2011) ("A municipality or other local government may be liable under this section [1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978))); *Cash v. Cnty.*

*of Erie*, 654 F.3d 324, 333 (2d Cir. 2011). In other words, to state a claim under Section 1983 against a municipality, the plaintiff must allege facts showing: (1) the existence of a municipal policy, custom, or practice, and; (2) that the policy, custom, or practice caused the violation of the plaintiff's constitutional rights. *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012); *see Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997) (internal citations omitted).

A plaintiff may satisfy the policy, custom, or practice requirement by alleging facts supporting the existence of one of the following:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of the those who come into contact with the municipal employees.

*Brandon v. City of New York*, 705 F. Supp. 2d 261, 276-77 (S.D.N.Y. 2010) (citations omitted).

Plaintiff alleges no facts showing that a policy, custom, or practice of the City of New York, the City of White Plains, or the County of Westchester caused a violation of her federal constitutional rights. Thus, the Court also dismisses Plaintiff's claims under Section 1983 against the City of New York, the City of White Plains, and the County of Westchester for failure to state a claim on which relief may be granted. *See* § 1915(e)(2)(B)(ii). In light of Plaintiff's *pro se* status, however, the Court grants Plaintiff leave to replead these claims in an amended complaint in which she names the City of New York, the City of White Plains, and/or the County of Westchester (and not any municipal agency, such as a police department) as a defendant, and in which she alleges facts sufficient to state a claim under Section 1983 against the City of New York, the City of White Plains, and/or the County of Westchester.

## H.    Procedural due process

The Court also interprets Plaintiff's complaint and supplements as asserting claims, under

Section 1983, that her federal constitutional right to procedural due process was violated when

her vehicle was booted and ultimately towed. The Due Process Clause of the Fourteenth

Amendment protects "against deprivations [of life, liberty, or property] without due process of

law." *Rivera-Powell v. N.Y. City Bd. of Elections*, 470 F.3d 458, 464 (2d Cir. 2006) (internal

quotation marks and citation omitted). "The fundamental requisite of due process of law is the

opportunity to be heard . . . at a meaningful time and in a meaningful manner." *Goldberg v.

Kelly*, 397 U.S. 254, 267 (1970) (internal quotation marks and citations omitted). Determining

whether the process provided is adequate requires a weighing of: (1) the private interest affected;

(2) the risk of erroneous deprivation and the probable value of further safeguards; and (3) the

governmental interest at issue. *See Rivera-Powell*, 470 F.3d at 466 (quoting *Mathews v.

Eldridge*, 424 U.S. 319, 335 (1976)).

A government official's random and unauthorized act does not violate a person's right to

procedural due process if a meaningful postdeprivation remedy is available. *See Hudson v.

Palmer*, 468 U.S. 517, 533 (1986); *Parratt v. Taylor*, 451 U.S. 527, 540-43 (1981), *overruled in

part on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986); *Hellenic Am. Neighborhood

Action Comm. v. City of New York*, 101 F.3d 877, 880 (2d Cir. 1996). Accordingly, a claim under

Section 1983 asserting that a government official has deprived a person of a property interest is

not cognizable in a federal district court if state law provides an adequate remedy for the

deprivation of that interest. *See Zinermon v. Burch*, 494 U.S. 113, 127-39 (1990); *Hudson*, 468

U.S. at 533. Thus, when a plaintiff asserts such a claim, "the federal court's initial inquiry must

be whether the state has provided adequate remedies to redress such unlawful acts." *Vialez v.

N.Y.C. Hous. Auth.*, 783 F. Supp. 109, 114 (S.D.N.Y. 1991). "[I]f a plaintiff had an opportunity

to contest a defendant's actions but failed to do so, there can be no claim for violation of his or her procedural due process rights under 42 U.S.C. § 1983." *Id.* at 113.

Courts have found that the New York Vehicle and Traffic Law and Article 78 of the New York Civil Practice Law and Rules provide adequate procedural due process to challenge parking and traffic summonses, and the resultant seizure and towing of a vehicle due to a litigant's failure to pay the associated fines. *See Tsinberg v. City of New York*, No. 1:20-CV-0749 (PAE), 2021 WL 1146942, at *1-2, 4-6 (S.D.N.Y. Mar. 25, 2021) (discussion in the context of vehicle immobilized and towed due to parking-violation fine payment delinquency within the City of New York); *Dubin v. Cnty. of Nassau*, 277 F. Supp. 3d 366, 387-92 (E.D.N.Y. 2017) (imposed traffic-violation fine context); *Nestle Waters N. Am., Inc. v. City of New York*, No. 1:15-CV-5189 (ALC), 2016 WL 3080722, at *8 (S.D.N.Y. May 25, 2016) ("Courts in this Circuit have found that, as a general matter, the [New York City Parking Violations Bureau]/Article 78 review process for challenging parking summonses meets the requirements of procedural due process. . . . [T]he City's administrative parking violations system, together with the judicial system of the State of New York, provided plaintiff with adequate pre-deprivation remedies, adequate postdeprivation remedies, and sufficient notice that such remedies were available." (internal quotation marks and citation omitted)), *aff'd*, 689 F. App'x 87 (2d Cir. 2017) (summary order); *Yu Juan Sheng v. City of New York*, No. 05-CV-1118, 2005 WL 8159559, at *1-3 (E.D.N.Y. Aug. 10, 2005) (denying immediate injunctive relief seeking: (1) vacatur of "all property executions and judgments issued against [the plaintiff] in connection with unpaid parking tickets; [(2)] stays [of] enforcement of all outstanding parking tickets; [(3) an order] requir[ing] the New York City Department of Finance to permit public observation of parking ticket hearings with at least five chairs per hearing room; and [(4) an order]

suspend[ing] the requirement that [the] plaintiff pay fines before appeal"), *aff'd*, 181 F. App'x 38 (2d Cir. 2006) (summary order); *Rackley v. City of New York*, 186 F. Supp. 2d 466, 480-82 (S.D.N.Y. 2002).

Plaintiff has alleged nothing to suggest that she has pursued any type of state administrative review or judicial review, including state court judicial review via an Article 78 proceeding, to challenge the parking and/or traffic violation fines assessed against her and/or the booting and towing of her vehicle as a result of her delinquency with respect to paying those fines. Thus, because Plaintiff has not shown that she has pursued any such state process, she cannot assert that she has been denied procedural due process. *See Vialez*, 783 F. Supp. at 113. The Court therefore dismisses Plaintiff claims, under Section 1983, in which she asserts that she has been denied procedural due process, for failure to state a claim on which relief may be granted. *See* § 1915(e)(2)(B)(ii). The Court, however, grants Plaintiff leave to amend her complaint to allege facts showing how she has been denied adequate procedural due process with respect to payment of delinquent parking and/or traffic violation fines and as to the booting and towing of her vehicle.

## I.    Leave to assert claims against individual state actors

The Court also grants Plaintiff leave to replead her claims, under Section 1983, in an amended complaint in which she names, as defendants, individual state actors who were directly and personally involved in the alleged violations of her federal constitutional rights. A claim for relief under Section 1983 must allege facts showing that a defendant acted under the color of a state "statute, ordinance, regulation, custom or usage." 42 U.S.C. § 1983. Thus, to state a claim under Section 1983, a plaintiff must allege both that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under the color of state law, or a "state actor." *West v. Atkins*, 487 U.S. 42, 48-49 (1988); *Meadows v.*

*United Sers., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020) ("State action [for the purpose of Section 1983 liability] requires *both* . . . the exercise of some right or privilege created by the State . . . *and* the involvement of a person who may fairly be said to be a state actor." (internal quotation marks and citation omitted, emphasis in original)). To state a claim under Section 1983 against an individual state-actor defendant in their individual capacity, a plaintiff must allege facts showing that individual state-actor defendant's direct and personal involvement in the alleged constitutional deprivation. *See Spavone v. N.Y. State Dep't of Corr. Serv.*, 719 F.3d 127, 135 (2d Cir. 2013) ("It is well settled in this Circuit that personal involvement of defendants in the alleged constitutional deprivations is a prerequisite to an award of damages under [Section] 1983." (internal quotation marks and citation omitted)). A defendant may not be held liable under Section 1983 solely because that defendant employs or supervises a person who violated the plaintiff's rights. *See Iqbal*, 556 U.S. at 676 ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."). Rather, "[t]o hold a state official liable under [Section] 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official." *Tangreti v. Bachmann*, 983 F.3d 609, 620 (2d Cir. 2020).

Plaintiff does not name any individual state actors as defendants. The Court therefore grants Plaintiff leave to replead her claims, under Section 1983, in an amended complaint in which she names, as defendants, individual state actors and alleges facts showing those individual state actors' direct and personal involvement in the alleged violations of her federal constitutional rights.

### LEAVE TO AMEND GRANTED

Plaintiff proceeds in this matter without the benefit of an attorney. District courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its

20

defects, unless amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011). Indeed, the United States Court of Appeals for the Second Circuit has cautioned that district courts "should not dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)). Because Plaintiff may be able to allege additional facts that state a valid claim under Section 1983, the Court grants Plaintiff 30 days' leave to replead her claims in an amended complaint, as specified above.

If Plaintiff does not file an amended complaint within the time allowed, the Court will direct the Clerk of Court to enter a judgment dismissing this action for the reasons set forth in this order. The effect of that judgment will be: (1) the Court's dismissal of Plaintiff's claims under federal law for the reasons set forth in this order; (2) the Court's declining to consider, under its supplemental jurisdiction, Plaintiff's claims under state law; and (3) the Court's denial of any pending requests and motions in this action as moot.

## CONCLUSION

The Court dismisses this action for the reasons set forth in this order, and denies Plaintiff's motion regarding a "false docket" (ECF 9), which includes a request seeking the recusal of the undersigned. The Court, however, grants Plaintiff 30 days' leave to replead certain claims in an amended complaint, as specified above.

If Plaintiff does not file an amended complaint within the time allowed, the Court will direct the Clerk of Court to enter a judgment dismissing this action for the reasons set forth in this order. The effect of that judgment will be: (1) the Court's dismissal of Plaintiff's claims under federal law for the reasons set forth in this order; (2) the Court's declining to consider,

under its supplemental jurisdiction, Plaintiff's claims under state law; and (3) the Court's denial of any pending requests and motions in this action as moot.

The Court certifies, under 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith and, therefore, IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Court directs the Clerk of Court to hold this matter open on the docket until a civil judgment is entered.

SO ORDERED.

Dated:   May 21, 2025
         New York, New York

                                    /s/ Laura Taylor Swain
                                    LAURA TAYLOR SWAIN
                              Chief United States District Judge